IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF FABIAN A. & SUEEVA A.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF FABIAN A. & SUEEVA A.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

KEISHIA M., APPELLANT.

Filed December 28, 2021.    Nos. A-21-422, A-21-423.

Appeals from the County Court for Scotts Bluff County: KRIS D. MICKEY, Judge. Affirmed.

Jessica R. Meyers, Deputy Scotts Bluff County Public Defender, for appellant.

No appearance for appellee.

Katy A. Reichert, of Holyoke, Snyder, Longoria, Reichert & Rice, P.C., L.L.O., guardian ad litem.

MOORE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Keishia M. appeals from the decision of the county court for Scotts Bluff County, sitting as a juvenile court, terminating her parental rights to her children, Fabian A. and Sueeva A. Although there is evidence that Keishia has made some progress in addressing her methamphetamine use, our de novo review nevertheless reveals ongoing areas of concern which support termination of her parental rights. We therefore affirm the juvenile court's orders in these consolidated cases.

- 1 -

## BACKGROUND

### PROCEDURAL BACKGROUND

Keishia is the mother of Fabian, born in 2009, and Sueeva, born in 2015. Luis A. is the children's father, and his parental rights were terminated in these same juvenile proceedings below. However, Luis is not part of this appeal and will only be discussed as necessary. Keishia also has other children who are not part of this appeal, and we will discuss them only as necessary.

According to the Nebraska Department of Health and Human Services' (DHHS) court reports in our record, an intake was received on December 12, 2019, indicating that Keishia was arrested following law enforcement's execution of a search warrant at her home; law enforcement was searching for shoplifted items. During the search, officers discovered methamphetamine. Sueeva was present in the home at that time. A few days thereafter, Fabian and Sueeva, respectively ages 10 and 4 at the time, were placed on a 48-hour hold due to safety concerns in Keishia's home. At the time, Fabian had been living primarily with the children's paternal aunt, Yesenia A., since approximately March 2018.

The State filed two separately docketed juvenile cases, one for each child; however, the allegations in each case were the same. In the juvenile petitions filed on December 19, 2019, the State alleged that the children fell within Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) because they were in a situation dangerous to life or limb or injurious to their health or morals, and/or because their parents neglected or refused to provide proper or necessary subsistence, education, or other care necessary for their health, morals, or well-being. Specifically, the State alleged that Keishia and Luis neglected to meet the children's needs for stability, safety, and supervision; that Keishia's use of controlled substances placed the children at risk of harm or deprived them of necessary parental care; and that the children lacked safe and stable housing. The juvenile court entered orders that same day placing the children into the temporary custody of DHHS, and the children were placed with Yesenia.

At a hearing on January 30, 2020, Keishia admitted to the allegation in the juvenile petition that the children lacked safe and stable housing, and the State agreed to dismiss the allegation in the petition regarding Keishia's use of controlled substances. The record does not indicate whether the allegation that Keishia neglected to meet the children's needs was dismissed. Accordingly, the juvenile court adjudicated the children as being within the meaning of § 43-247(3)(a). The court ordered random drug testing for Keishia.

Following the dispositional hearing on February 25, 2020, the juvenile court adopted the DHHS court report and case plan dated February 19, 2020, and the court directed all parties to comply with the terms therein, including any court amendments. The DHHS case plan provided that Keishia would utilize economic assistance, community resources, and/or locate employment to meet the needs of the children; work with a provider and informal supports, attend all medical, dental, and vision appointments for the children as well as their school activities; work to coparent the children appropriately with Luis; work with an individual therapist to address her own life traumas; and participate in a drug abuse evaluation and follow the recommendations of that evaluation. The court also ordered Keishia to complete a parenting assessment that included psychological and drug abuse evaluations, participate in Circle of Security, and complete drug testing via a drug patch. The court ordered counseling for the children. At the time of the

dispositional hearing, Keishia was living in Chadron, Nebraska, while the children lived in Gering, Nebraska. The court ordered visitation to occur in Scottsbluff, Nebraska, and DHHS was to provide transportation for Keishia.

Following a review hearing on May 28, 2020, the juvenile court adopted the provisions of the DHHS case plan dated May 5, 2020, and directed all parties to comply with its terms. The terms of the May 5 case plan remained the same as the February 19 case plan. Following a review hearing on August 25, the juvenile court adopted the DHHS case plan dated August 20, 2020, and directed all parties to comply with its terms; the terms of the August 20 case plan remained the same as the May 5 case plan, except the August 20 plan included adoption as an alternative concurrent goal to reunification. The court also found that "poor progress is being made." Following a review hearing on December 1, the juvenile court adopted the provisions of the DHHS case plan dated November 24, 2020, but amended it to show that "fair progress is being made." The court directed all parties to comply with the terms of the case plan, which remained the same as the August 20 case plan.

On December 8, 2020, the State filed motions to terminate Keishia's parental rights to Fabian and Sueeva pursuant to Neb. Rev. Stat. § 43-292(2), (4), and (6) (Reissue 2016). The State specifically alleged that: Keishia had substantially and continuously or repeatedly neglected and refused to give the children necessary parental care and protection; Keishia was unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior that was seriously detrimental to the health, morals, or well-being of the children; reasonable efforts to preserve and reunify the family had failed to correct the conditions leading to the adjudication of the children under § 43-247(3)(a); and termination was in the children's best interests.

PARENTAL TERMINATION HEARING

The hearing on the motion to terminate Keishia's parental rights was held on March 23, 2021. The State called seven witnesses, including Keishia. Exhibits were also received into evidence. A summary of the relevant evidence follows.

Lauren Trenkle, a child and family services specialist with DHHS, testified that she had previously investigated several intakes regarding Fabian and Sueeva beginning in March 2019. She stated that when first receiving an intake, she coordinates with "law enforcement, if at all possible, if there's an officer . . . or an investigator that has been assigned, followed by finding the children, making contact with the victims, all of the children in the household, followed by the caregivers." The first intake Trenkle investigated was on March 22, and involved concerns of "drug use" and "leaving the children with relatives" who were then "unable to get into contact with [Keishia or Luis] in regards to the children and domestic violence." At that time, "Fabian was staying on and off with . . . Yesenia," and "Sueeva stayed with [Keishia] or [Luis] and sometimes was watched by aunts if need be." Trenkle contacted Keishia and "offered a voluntary case" to assist in addressing the concerns underlying the intake. According to Trenkle, Keishia "denied needing specific services, but did accept some community resources." The intake was subsequently closed.

Trenkle investigated a second intake that came in on July 30, 2019, involving concerns of "substance use by Keishia," Keishia "letting known drug users . . . stay in the home," and the

"living conditions" in the home. However, Trenkle was not able to contact Keishia during the investigation, and the intake was closed due to insufficient information to find "any immediate safety concerns for the children."

Trenkle further testified regarding her investigation of the December 12, 2019, intake that led to the filing of the juvenile petitions in the current case. Pursuant to a search warrant, law enforcement conducted a search of Keishia's residence in connection to shoplifted items. During the search, methamphetamine was discovered in the home, and Sueeva was present in the home. Keishia was subsequently arrested. During her investigation, Trenkle spoke with the children. She testified that Fabian saw "people coming in and out frequently of [Keishia's] home" during his visits with Keishia, and these people would "spend a majority of the time in his mother's bedroom with the door closed and sometimes locked." When asked, Fabian informed Trenkle that "he did not know" if there were drugs in the home, but he had not seen any drugs. Fabian also described to Trenkle that he felt he needed to watch over Sueeva during his visits to Keishia's house, to make sure Sueeva "wouldn't walk out the front door, get into something she's not supposed to, and get her food when she is hungry." When Fabian was with his aunt and Sueeva was with Keishia, he worried "that Sueeva would get out the front door" and he worried about "who [was] caring for [Sueeva]." Fabian liked living with his aunt and that made him "feel safe."

Trenkle also spoke with Keishia after her arrest. According to Trenkle, Keishia denied knowledge and ownership of the methamphetamine found at her home, although she admitted to law enforcement that she knew of a "weed bong" present in the home. Trenkle asked Keishia "about working a voluntary case" with DHHS "given the current circumstances of her arrest and the pattern of the intakes coming in frequently during that year." According to Trenkle, Keishia responded, "'I really don't want to work these services. I have done it before.'" After Keishia's release on bond, Trenkle and an investigator met Keishia at her residence on December 18, 2019, to discuss "a safety plan" because Trenkle "had identified a safety threat at that point" in that Keishia "does not or cannot meet the [children's] immediate needs for supervision, food, clothing, and/or medical or mental health care." The proposed safety plan required a "safety plan monitor to be with [Keishia] and supervise her contact with the children," but Keishia told Trenkle that she did not have anyone that "would be able to pass a background check" and fulfill the requirements of a monitor. Trenkle and the investigator gave Keishia "an hour and a half" to talk with relatives to find someone to be a safety plan monitor. When Trenkle and the investigator returned to Keishia's residence an hour and a half later, Keishia was not there. Trenkle made contact with Keishia's grandmother and another relative who were at Keishia's home and learned that "they hadn't spoken to [Keishia] that day." Trenkle and the investigator waited an additional 20 minutes, but Keishia did not return during that timeframe. Fabian and Sueeva were subsequently put on a "48-hour police hold" prior to their placement in the custody of DHHS.

Cassie Hayes was the DHHS child and family service specialist assigned to this case in December 2019, and she became the primary worker in January 2020. Her role was to put in "services for the family that they need or request that can help them be more successful," and to conduct "various assessments to see where we're at, progress points," and to make a case plan for the family and provide court reports. Hayes testified that at the time of the termination hearing, the children "[had] been in out-of-home care for . . . 14 months." Throughout the duration of the case, Hayes offered Keishia several services through DHHS, including a substance abuse evaluation,

drug testing through a drug patch, counseling, supervised visitation with Fabian and Sueeva, and assistance in acquiring a phone.

Hayes described Keishia's substance abuse as a significant concern in this case. According to Hayes, Keishia began undergoing drug testing through DHHS by drug patch in "January or February of 2020" and was immediately compliant with the testing. Keishia regularly tested positive for methamphetamine through the end of August 2020; Keishia told Hayes her "substance of choice" was methamphetamine. However, from September 2020 until the end of January 2021, Keishia's tests had been "clean," with the exception of a positive test for a "very low level of THC" on January 27, 2021. While Keishia participated in and graduated in December 2020 from an intensive outpatient program concerning her substance abuse and was continuing in "aftercare" with her drug counselor, Hayes testified that Keishia had not acted on Hayes' referrals for "individual mental health counseling" to address issues underlying her substance abuse. Hayes also made referrals for Keishia to complete "Circle of Security" classes, but at the time of the termination hearing, Keishia had made three attempts "without completion" of the classes and had "started her fourth attempt recently." Keishia was discharged from her prior three attempts due to "lack of engagement" and attendance issues.

Hayes also expressed concerns about discovering Keishia's "boyfriend, Montice R[.], being in the home" "around Thanksgiving of 2020." The children "alerted us." This was concerning because Montice had "just that week been released . . . on bail bond for current criminal charges in a case going for substance." (A corporal employed by the Scotts Bluff County Detention Center testified that Montice was in the facility's custody from July to November 2020 "on charges for possession of controlled substance"; the same witness laid foundation for exhibit 14, which showed hundreds of calls placed by Montice from September to November to the motel phone number where Keishia worked.) Hayes testified that she had listened to telephone calls between Keishia and Montice just prior to when Keishia "bailed him out" the week of Thanksgiving. Montice "was very aggressive with [Keishia] or very demanding, very controlling, very hurtful in the way he was talking to her." In another call with Montice, Keishia mentioned someone "wanting to buy clean urine from her." (Keishia later explained that the person asking was at the time dating Montice's brother.) When Hayes talked to Keishia about her concerns related to Montice, Keishia's response was that "she didn't see that it mattered," that it did not "affect her parenting and being a good mom and . . . it shouldn't affect her having her children." Hayes testified "there was more to it than just the substance use and things that were coming back through visitation notes that were very concerning due to [Montice] being there." It was reported there was "fighting between the two with children present" and Montice had been "smoking THC with [Keishia's] older child in the home with the younger two present during a visit." Keishia denied these incidents. Approximately the "end of December" 2020, or "beginning of January 2021," Keishia told Hayes that Montice was "no longer in the home and they were not together. They were just friends."

Hayes also testified about jail calls in March 2021 between Keishia and someone who had been arrested while staying at the motel where Keishia worked. Keishia later testified that this person was someone she had known "since he was a little kid." Hayes indicated that there were references to Keishia having somebody passed out at her place. Keishia claimed the person called asking for Montice and that she told him that Montice "was at his house passed out." In our review

of the recording, Keishia merely replied, "He's passed out"; she did not describe where he was passed out. According to Hayes, the jail calls from "March 5th of 2021" were evidence that for Keishia, "the people, places, and things" were not changing; her progress in making changes in this regard was "[p]oor."

Regarding Keishia meeting the children's emotional needs, Hayes testified that Keishia had attempted to do so, but her "lack of support for the need for counseling for Fabian, the reality of him needing it just doesn't seem to hit home." DHHS had referred Keishia for the Circle of Security class, which, according to Hayes, ties into a child's emotional needs. But as noted previously, Keishia had attempted the class three times without completion and just started her fourth attempt recently.

According to Probation Officer Jason Brandt, Keishia was convicted on charges of "shoplifting" and "third-degree assault of a peace officer" following her arrest in December 2019. She was sentenced in August 2020 to 18 months' probation, and her sentence required her to submit to drug testing through probation. Brandt testified that Keishia had "missed 15 [drug] tests out of 57 total tests" since her probation term began in August 2020, and five of those missed tests occurred in 2021 prior to the termination hearing in March. He also testified that there was a confirmed "tamper" with Keishia's "continuous alcohol monitor bracelet" on 6 different days in January 2021. Brandt reported that while Keishia's "drug screens . . . have been clean," she admitted to him that she was "having . . . some tough things going on in her life" and had "thoughts of using again."

Brandt further testified that after Keishia's probation term began in August 2020, Keishia was drug testing through both DHHS and probation until January 2021. Keishia thereafter began testing solely through probation, and probation transmitted Keishia's results to DHHS pursuant to a release of information. Brandt also testified that he initially had Keishia participate in "moral recognition [sic] therapy" "this year" as part of her probation term; moral reconation therapy's (MRT) "core concept" is that "if you can change your beliefs, you can change your behavior." It is a 12-step program, and Keishia never moved past step one. Brandt talked with Keishia about not doing "MRT right now" due to some difficulties in Keishia's attendance. Brandt felt that Keishia was "taking her recovery at her own pace," and he testified that Keishia's drug counselor had reported a similar conclusion.

Hayes and Brandt both testified about Keishia's continued personal associations as concerns for her recovery. Hayes testified that Keishia's association with the "same people that she was [around] when she was using," many of whom had "their own criminal history or current criminal cases going on," was not conducive to maintaining a "safe environment" and a "sober lifestyle." This concern was echoed by Brandt. He believed she was still "dating" Montice, who he knew had "absconded from probation" and a "warrant is either going to be issued or has been issued for him." Brandt also had concerns about a woman staying at the motel where Keishia worked; Brandt knew this woman used substances and that "she's been in trouble before for distribution." Brandt felt that Keishia was at the "contemplative" stage "where they're really kind of on the line . . . between do I really want to do this or [do] I want to go back to my old lifestyle." The day before the termination hearing, he voiced his concerns to Keishia about having to change her "people, places, and things," and he thought Keishia was "kind of on the fence on which way to go." Keishia told Brandt she had "some tough things going on in her life right now" and she

"did admit, which I think was honest, about thoughts of using, but she told me she's clean." The number of drug tests she missed was concerning to Brandt, and "some of the people that she's hanging out with shows me maybe that she's kind of happy with that lifestyle." On the other hand, "[h]er doing treatment with [her drug counselor] shows me maybe she wants something different. So it's like she's right on that line, and I don't know what direction she's going to go."

Hayes testified that Keishia maintained consistent employment as a motel manager throughout this case. She transferred to work in multiple locations in Nebraska and one location in Wyoming, and she most recently managed a motel in Scottsbluff, Nebraska. A fire occurred at the motel the week prior to the termination hearing, and Keishia lost her employment as a result. To Hayes' knowledge, Keishia was not at fault for the fire. As part of her employment, Keishia was provided housing by the motel's owner, and the loss of her employment also resulted in the loss of this housing. At the time of the hearing, Keishia had put in an application for a housekeeping job at another motel, but had not yet secured stable employment or housing.

Regarding Keishia's visitation with Fabian and Sueeva, Hayes testified to some inconsistency in visitation up through August 2020. Early in the case, when Keishia was living in Chadron, she had two visits a week with the children. According to Hayes, Keishia did her best to make sure those visits happened, and "visits were cancelled" only due to snow. As of February 2020, Keishia had missed 8 visits and made 10 visits. Visits were virtual starting in March, and in-person visits resumed in June. And while Hayes described the return to in-person visits as "rocky to start," she noted that Keishia "always came prepared with food, activities, [and] all kinds of art stuff . . . to do with them." Keishia "progressed into semi-supervised visits" in October. However, visitation returned to full supervision in November due to concerns about Montice being in the home, but Keishia's semi-supervised visits resumed in February 2021, a month prior to the termination hearing. Hayes stated that "[v]isits were starting to go better" beginning in September 2020 and that "ten hours per week" of visitation time were authorized at the time of the termination hearing. However, despite Keishia's improved consistency in visitation, Hayes said that she would "expect more hours of the parent having the child, whether it be supervised or not," in a case that had been open for 14 months. Hayes was also concerned that Keishia's recent visits had been most frequently occurring at the motel she had managed, as her work at the motel was "kind of a 24/7 deal," and Hayes felt these visits were "not engaging." She felt that Keishia's pattern of "working so many hours" was an obstacle to both maintaining her sobriety and providing care for Fabian and Sueeva. While Hayes noted that Fabian and Sueeva "have been very excited to go to visits" with Keishia in the months before the termination hearing, Hayes testified that Fabian and Sueeva told her that "they get excited because their siblings are there and they get to go see them and do things with them."

Hayes testified that Keishia had "done very well" in addressing sobriety and "overcoming a substance that is extremely difficult to overcome." She also noted that Keishia has "a couple of good informal supports such as her mom" and other family members where she could stay while finding a place to live. However, the ongoing concern for DHHS at the time of the termination hearing was that Keishia was not changing her "people, places, and things" to advance her recovery. Hayes further believed that it was in the best interests of Fabian and Sueeva to terminate Keishia's parental rights based on Keishia's "placing herself in danger [and] in the same lifestyle that's been a concern since the case opened."

Yesenia is the children's paternal aunt and was the foster placement at the time of the termination hearing. According to Yesenia, Fabian had been living with her since approximately March 2018, and Sueeva began living with her in December 2019. Fabian began living with Yesenia due to Keishia "trying to get a fresh start . . . [and to] get away from a toxic relationship with my brother" by moving to Lincoln, Nebraska. Keishia and Yesenia agreed that "it was a good idea . . . not to pull [Fabian] from school" when he had only a "couple more months" of the school year left. Yesenia could not recall when Keishia moved back from Lincoln, but Fabian "still lived with [Yesenia], but he would go with [Keishia] too" and "kind of just jump from house to house."

Throughout this case, Yesenia saw "changes" in the children and in their visits with Keishia. Yesenia testified that early on, Sueeva "would have severe tantrums for no reason" and Fabian "would just be closed, quiet, and just shut the world out" after visits with Keishia. Yesenia affirmed that Fabian would try to "parent" Sueeva and express concern for "how she's doing" or whether she was "getting enough to eat" when he was not with her. However, beginning a "couple of months" before the termination hearing, Fabian and Sueeva were "excited to go" to visits with Keishia, and Yesenia described them as acting "normal when they come back" from those visits. Although she noted that the children "minimal[ly]" talked about Keishia outside of visits, Yesenia stated that Keishia having semi-supervised and overnight visits "wouldn't be a concern" for her. During examination by the juvenile court, Yesenia stated that Fabian and Sueeva "love to be with" Keishia, and she felt that Keishia had "come a long way from when this first started." She also hoped that Keishia could "get another chance to mother her kids." However, when subsequently asked whether she was aware that Keishia was being drug tested through probation and had "missed over a quarter of her drug tests," Yesenia agreed that this was a concern.

Maria Lucy Saenz is a licensed professional counselor and had been providing psychotherapy for Fabian since April 2020. According to Saenz, Fabian was diagnosed with anxiety, depression, "delayed stress reaction," and "other specified trauma and stressor-related disorder." She testified that in addition to a "high level of anxiety," Fabian had also experienced visual and auditory hallucinations for which he was prescribed medication. Although Fabian had made some progress in managing his anxiety, Saenz described him as "confused about his role as a child," and she believed he was "taking . . . a role for [an] adult, for his sister." She noted that Fabian was "mak[ing] excuses all the time" for Keishia and Luis, and he would "shut[] down and get upset" if confronted about that behavior. Saenz agreed that Fabian tended to prioritize "mak[ing] other people happy" over himself, and she believed that Fabian needed "consistency" through having an adult present in his life "to provide for him." She noted that while Yesenia had participated in updating Fabian's treatment plan over the course of therapy, Keishia had only attended two family therapy sessions with Fabian despite multiple invitations. The last appointment Keishia attended in March 2021 "wasn't very productive," as Keishia was having difficulty "trying to control the kids because they were disrespectful and not cooperating."

The State called Keishia to testify. Keishia described the motel she had worked at as having "a bad reputation of drug dealers, drug usage going on there." Keishia acknowledged that she "tend[s] to work a lot to avoid other issues" that she's facing, and she testified that her "number one" trigger regarding her substance abuse was "dealing [and coping] with [her] emotions." She recalled that she began to use methamphetamine at some point in 2004 or 2005 when she "was about 18." She was arrested for methamphetamine in 2008 for which she was given a term of

probation that was subsequently extended because she "caught another theft charge." Keishia claimed her methamphetamine use was "on and off until [she] got pregnant with Fabian," after which she was sober for 11 or 12 years. She relapsed in "October of 2018" due to several stressors, including her "off and on" relationship with Luis before she ended their relationship. At the time of the termination hearing, she felt that she now had "people who are supportive" of her that she could reach out to if she felt that she was about to relapse.

Keishia acknowledged she consistently talked with Montice while he was in custody from July to November 2020, and that she helped "bond [him] out." She met Montice "[t]hrough drugs," and had known him for 2 years. She also stated that she has "not really been communicating" with Montice because she "know[s] what [she has] to do" and has seen the "red flags" in that relationship. However, when asked if she was still talking with Montice, Keishia's response was, "Not really, no." When asked what that meant, Keishia indicated that her son was dating Montice's "little sister," so she tried to limit dropping "him off there." The State reminded Keishia that in one of the jail calls she received in March 2021, it came up that Montice was accusing Keishia of cheating on him, so she was asked again if she was still in a relationship with Montice. When she replied, "No," the State asked why Montice would care about her cheating on him if that were the case. Her response was, "Because controlling people care. They're -- they -- it doesn't end. I mean, that's why I up and -- that's why I can't have contact with Luis."

Keishia claimed that she told Fabian it was "okay to be in counseling or to be on meds because I think he thinks I don't think it's okay." She acknowledged, however, that she did not want to put Fabian "on the meds until we absolutely had to," that she "was against it," and she asked Hayes "if there's other angles we could try besides putting him on the meds." Keishia noted her "other son" had "ADHD" and she said she did not want her children "addicted to pills or anything like that because I know my addiction, you know, it's going to run in their blood . . . with me and their father."

JUVENILE COURT'S DECISION

On May 17, 2021, the juvenile court entered separate but fairly identical orders terminating Keishia's parental rights to Fabian and Sueeva after finding by clear and convincing evidence that statutory grounds for termination existed pursuant to § 43-292(2), (4), and (6), and that termination of Keishia's parental rights was in the children's best interests.

The juvenile court noted Keishia's graduation from an intensive outpatient program and her work with a drug counselor, and also noted that Keishia maintained employment throughout "most of the case." However, the court pointed out that Keishia was "taking recovery at her own pace and had not completed any programming through probation," and that Keishia's "job took precedence over her children." The court was also concerned with Keishia's relationship with Montice, "a person known to have a history of substance use and domestic violence," noting that Keishia had bonded him out of jail, and while he was in jail, evidence showed "hundreds of calls to Keish[i]a." The court specifically found that the credibility of witnesses weighed in favor of the State's witnesses over that of the parents, and further stated:

> This court has not asked either parent to be a great parent, or even to be a good parent. Rather, the law is designed to afford parents the chance to become minimally adequate to receive back custody of their children. Unfortunately, neither parent has cleared that

threshold, and instead have demonstrated a continued parental unwillingness or incapacity to meet the basic needs of these children. Clear and convincing evidence warrants adjudication of the motions to terminate parental rights as to each statutory factor alleged in these cases.

As for the children's best interests, the juvenile court concluded that the "totality of the evidence from the adjudication hearing, including an assessment of the children's long-term physical, social, and emotional needs," was sufficient "to demonstrate clearly and convincingly that termination of parental rights is appropriate and in the best interests of the children." The juvenile court pointed out that

> the parents' individual failures to provide for their children and accomplish meaningful and sustained improvement in parenting skills demonstrate parental unfitness and collectively dictate in favor of termination of parental rights being in the children's best interests. Both children have exhibited positive changes since being removed from the parents. These children should not be made to wait uncertain parental maturity when there is clear and convincing evidence that the children's overall future well-being stands to improve with the prospects of new relationships which the termination might open for them.

Keishia appealed the juvenile court's orders, and upon her motion, this court consolidated both cases for briefing and disposition. The State did not file a responsive brief, however a brief was filed by the children's guardian ad litem, which shall be referred to as the appellee's brief.

## ASSIGNMENTS OF ERROR

Keishia assigns that the juvenile court received insufficient evidence to find (1) "a statutory basis for termination exists," and (2) "termination is in both children's best interests."

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

### STATUTORY GROUNDS FOR TERMINATION

In order to terminate an individual's parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the children's best interests. *In re Interest of Leyton C. & Landyn C., supra.*

In its order terminating Keishia's parental rights to the children, the juvenile court found that statutory grounds existed pursuant to § 43-292(2), (4), and (6).

Section 43-292(2) provides for termination of parental rights when "parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling

- 10 -

of the juvenile necessary parental care and protection." Past neglect, along with facts relating to current family circumstances which go to best interests, are all properly considered in a parental rights termination case under § 43-292(2). *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). One need not have physical possession of a child to demonstrate the existence of neglect contemplated by § 43-292(2). *In re Interest of Joseph S. et al., supra*. Parents may as surely neglect a child of whom they do not have possession by failing to put themselves in a position to acquire possession as by not properly caring for a child of whom they do have possession. *In re Interest of Louis S. et al.*, 17 Neb. App. 867, 774 N.W.2d 416 (2009).

Keishia contends the children "came into care largely due to drug use," and that she has made "tremendous progress." Brief for appellant at 4. Keishia argues that besides the one positive test for a low level of THC in January 2021, she has "tested clean between August 2020 and January 2021." *Id*. She points out that her consistency in visitation attendance with her children improved from August 2020 forward and that this tracked with her sobriety. She further claims she did not let her relationship with Montice "drag her down," and that she broke it off with him in December 2020 "knowing she had to choose between Montice and her children." *Id*. at 5. She questions why DHHS finds her a "trustworthy enough parent" to have semi-supervised visitation but simultaneously seeks to terminate her parental rights. *Id*. Keishia acknowledges she "has struggled to attend and complete . . . Circle of Security and MRT." She claims to have been "tethered to work as her housing depended on her employment and the motel she was working at from November 2020 to March 2021 was chronically understaffed." *Id*. at 6. She suggests that since she lost her job due to the motel fire, she can find a new job with better hours, which will give her more time to complete the courses "that will help cement her progress." *Id*.

However, the guardian ad litem points to the fact that Keishia did "nothing throughout the course of the case" to address the underlying feelings that she avoided by moving to different towns and working "insane hours in an effort to keep those things at bay." Brief for appellee at 13-14. Also, Keishia "is still stuck with the same people, places, and things," and "part of her case plan was to develop healthy supports -- people who are good resources for when the bad emotions hit. Fourteen months in at the time of trial, that had not happened." *Id*. at 15. "[N]eglect in the juvenile world encompasses a lack of insight and a lack of motivation to change your priorities." *Id*.

Although it does appear Keishia has made some recent progress in addressing her substance use issues, she nevertheless has an admitted history of struggling with her use of methamphetamine, and the present case stems from a recent relapse with that substance. After the cases involving Fabian and Sueeva were initially filed in December 2019, Keishia regularly tested positive for methamphetamine through the end of August 2020. Her efforts to maintain her sobriety from September 2020 until January 2021 are certainly commendable, although we also note that maintaining sobriety was a condition of her probation which commenced in August 2020. And it is concerning that Brandt testified that Keishia had "missed 15 [drug] tests out of 57 total tests" since her probation term began in August 2020, and five of those missed tests occurred in 2021 prior to the termination hearing in March. Brandt also testified that there was a confirmed "tamper" with Keishia's "continuous alcohol monitor bracelet" on 6 different days in January 2021.

Additionally, as pointed out by the guardian ad litem, Keishia's failure to change her "people, places, and things" as part of her recovery has been a consistent concern throughout this

case. Hayes and Brandt testified that Keishia continued to associate with individuals who, due to their own substance abuse and patterns of criminal conduct, posed risks to her recovery, her children, or both. We also note that the various case plans adopted by the juvenile court maintained goals for Keishia that included "work[ing] with an individual therapist to address her own life traumas" and "work[ing] with formal and informal supports to provide appropriate emotional and behavioral support to Fabian and Sueeva." As we have described, Keishia did not act on Hayes' referrals for individual mental health counseling. Similarly, Brandt had withdrawn Keishia from moral reconation therapy prior to the termination hearing due to her "struggl[es] with attendance," and Keishia had been discharged from three prior attempts to complete the "Circle of Security" program due to "lack of engagement" and attendance issues. The testimony at the termination hearing indicates that Keishia did not make any significant progress in either of these programs.

Keishia testified that both methamphetamine and work were mechanisms she had used to avoid her problems, and therefore her own testimony underpins the importance of the services she was offered. Yet Keishia did not actively engage with the resources made available to her to help her address the underlying causes of her substance abuse and place her in a position where Fabian and Sueeva could be returned to her care. Neglect of children can be established when the evidence demonstrates that the parents are unable to place themselves in a position to regain possession of their children. See *In re Interest of Louis S. et al., supra*. A parent's lack of insight and lack of motivation to place the interests of his or her children ahead of the parent's interests clearly and convincingly establishes that the parent substantially, continuously, and repeatedly neglected his or her children and refused to give them the necessary parental care and protection. See *In re Interest of B.B. et al.*, 239 Neb. 952, 479 N.W.2d 787 (1992). Based upon our de novo review, we conclude that grounds for termination of Keishia's parental rights under § 43-292(2) were proven by clear and convincing evidence.

Any one of the bases for termination of parental rights codified by § 43-292 can serve as a basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Leyton C. & Landyn C., supra*. Accordingly, we need not determine whether termination of Keishia's parenting rights was proper pursuant to § 43-292(4) or (6). The next inquiry is whether termination of Keishia's parental rights was in the best interests of Fabian and Sueeva.

BEST INTERESTS AND UNFITNESS

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). But that is not all. A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that a parent is unfit. *Id.* The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination

of the children's best interests. *In re Interest of Nicole M., supra.* Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's wellbeing. *In re Interest of Leyton C. & Landyn C., supra.* The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id.*

Keishia argues that her case is different from those cases where children have been in foster care for 3 or 4 years, or where visitation remained supervised after an extended period and any "progress appeared to be spurred by last-minute attempts to prevent termination." Brief for appellant at 7. She claims she "has been making and sustaining change since August [2020], well before the motion to terminate was filed." *Id*. Keishia contends the "children are on the cusp of returning home and, under these conditions, termination is not the only reasonable alternative." *Id*. at 8.

The guardian ad litem acknowledges "positive progress in some aspects of this case." Brief for appellee at 18. Keishia "maintained employment and housing until a few days before trial. She regularly exercised her visitation with the children. She remained free from methamphetamine use for quite some time." *Id*. However, "[d]espite those achievements, . . . she was really in no position to regain custody of her children any time soon." The guardian ad litem points out that Keishia has not yet addressed the underlying issues that led to her substance abuse and she has minimally participated in therapy with the children. Reiterating Brandt's testimony that Keishia was recovering from substance abuse "at her own pace," the guardian ad litem argues that "[t]he children should not have to wait indefinitely for [Keishia] to rehabilitate herself 'at her own pace.'" *Id*. "She avoided her addiction, but she did not rehabilitate." *Id*. at 20.

We agree with the guardian ad litem's assessment. As previously discussed, the record demonstrates a lack of engagement by Keishia with the numerous services offered through DHHS and probation to help put her in a position to have Fabian and Sueeva returned to her care. Although we will not recount those concerns regarding Keishia's recovery, our previous analysis similarly applies in the context of the best interests of Fabian and Sueeva, as well as Keishia's fitness as a parent.

Further, Keishia's recovery has not been the only concern during this case. As Saenz testified, Fabian has experienced significant mental health difficulties, including depression and anxiety, since these proceedings began, and Saenz believed that Fabian's anxiety led him to experience hallucinations that have required medication to manage. According to Saenz, these difficulties stem from Fabian's confusion regarding "his role as a child" to Keishia as his mother and Yesenia as his foster parent. Both Saenz and Yesenia testified that Fabian has attempted to "parent" Sueeva, and he consistently worried about his sister when the two were apart. Saenz also testified that Fabian "justif[ied]" and made "excuses all the time" for his mother and father. We agree with Saenz' opinion that Fabian should not feel responsible for parenting Sueeva or otherwise feel worry for whether or not she is cared for, and it is similarly not his responsibility to justify the actions and inaction of the adults in his life in order to "try and protect them." Yesenia observed improvements in the children's behaviors after they had been in her care. Both Fabian and Sueeva are in need of "consistency" in their lives that can only be provided through a consistent parental figure.

- 13 -

At the time of the termination hearing, Fabian and Sueeva had been in foster placement with Yesenia for 14 months, and Fabian had been primarily living with Yesenia since approximately March 2018. We note that Keishia had progressed to semi-supervised visits in October 2020, but she regressed to fully supervised visits in November due to reports of Montice being in her home. Her semi-supervised visitation resumed in February 2021, and 10 hours per week were authorized for visitation at the time of the termination hearing. Hayes testified that she "would expect more hours of the parent having the child[ren]" in a case that had been open for 14 months, and we find this testimony to be illustrative of the lack of progress that has been a barrier to reunification in this case. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Ryder J., supra*. We find that the State has rebutted the presumption of parental fitness as to Keishia. We further find that there is clear and convincing evidence that it is in the children's best interests to terminate Keishia's parental rights.

CONCLUSION

For the reasons set forth above, we affirm the orders of the juvenile court terminating Keishia's parental rights to Fabian and Sueeva.

AFFIRMED.